UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TYKEEVIUS S. JOYNER,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF OWOSSO et al.,<br><br>                    Defendants. | Case No. 25-12563<br>Honorable Shalina D. Kumar<br>Magistrate Judge Curtis Ivy, Jr. |

**OPINION AND ORDER STAYING CASE PENDING RESOLUTION OF STATE CRIMINAL PROCEEDING**

## I.    Introduction

Plaintiff Tykeevius Joyner sues the City of Owosso (the "City"), and individual City police officers Scott Davis ("Davis") and Brandon Stockford ("Stockford") for injuries he sustained when Davis tasered him in connection with a reported disturbance at a hotel in the City. Joyner's complaint alleges claims for excessive force and failure to intervene against Davis and Stockford, respectively, under 42 U.S.C. § 1983, a *Monell* claim against the City, as well as several state law claims. *See* ECF No. 1. Defendants move to dismiss Joyner's complaint on abstention grounds.

Page **1** of **15**

ECF No. 17. The motion has been fully briefed, ECF Nos. 21, 25, and the Court finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2).

## II.     Factual Background

Joyner's complaint alleges that he was lawfully on the premises of the Comstock Inn on the afternoon of September 21, 2023, when Davis and Stockford responded to a report of trouble at the hotel. ECF No. 1. PageID.5, ¶ ¶ 16–17. Joyner claims Davis and Stockford, who were familiar with his mental status, observed him to be in an agitated state, pacing and shouting. *Id.*, at ¶ ¶ 19–20. According to the complaint, Davis attempted to arrest Joyner outside the hotel, despite Joyner's compliance with the officers' verbal demand that he leave the hotel lobby. *Id.* at PageID.5–6, ¶ ¶ 21–24. Davis and Stockford stood close to and shouted at Joyner in a manner he found threatening. *Id.* at PageID.6, ¶ 26. Fearing an assault, Joyner panicked and broke free of Davis and Stockford after they forcefully grabbed him in their attempt to arrest him. *Id.*, at ¶ ¶ 27–28.

The complaint alleges that Davis fired his taser at Joyner, striking him in the back. *Id.*, at ¶ 29. Joyner immediately fell, hitting the back of his head on the ground. *Id.*, at ¶ 30. Joyner convulsed and was unresponsive while

Davis and Stockford handcuffed him. *Id.* at PageID.7, ¶ 32. Joyner was taken to a hospital via ambulance. *Id.*, at ¶ 33.

Joyner was charged in Michigan's 66th District Court with two counts of assaulting, resisting, or obstructing a police officer, M.C.L. § 750.81d(1), and one count of malicious destruction of property, M.C.L. § 750.377a(1)(b)(i). *See* ECF No. 16-2. The issued warrant for Joyner's arrest on these charges remains outstanding and the criminal action against Joyner related to the events of September 21, 2023, remains open. *See id.*

Joyner's complaint in this action indicates that he now resides in Greenville, North Carolina. ECF No. 1, PageID.3, ¶ 6. Defendants argue that Joyner left Michigan to evade arrest for these and other criminal charges and urge the Court to abstain from exercising its jurisdiction over this matter by dismissing, or, in the alternative, staying it pending the resolution of the state criminal proceeding concerning the same events that gave rise to this action. *Compare* ECF No. 17, PageID.170 (defendants' brief in support of their motion to dismiss on abstention grounds asking for dismissal as relief) *with* ECF No. 25, PgID.242–43 (reply brief in further support of defendants' motion to dismiss asking only for a stay pending

resolution of Joyner's felony charges as relief). For the following reasons, the Court agrees that abstention is appropriate but will stay the matter, pending the outcome of the state criminal proceedings against Joyner, rather than dismiss the case.

## III.   Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the district court lacks subject matter jurisdiction. Rule 12(b)(1) motions for lack of subject matter jurisdiction may challenge either (1) the facial sufficiency of the pleading itself, or (2) the factual grounds for invoking subject matter jurisdiction. *W6 Restaurant Grp. v. Loeffler*, 140 F.4th 344, 349 (6th Cir. 2025). Facial challenges address whether the pleading alleges a basis for subject matter jurisdiction. *Id*. The court views the pleading's allegations as true and construes them in the light most favorable to the nonmoving party. *Id*. In contrast, a factual attack does not challenge the sufficiency of the pleading's allegations, but rather the "factual existence of subject matter jurisdiction." *Id*. (internal quotation omitted). Where a factual attack is made, the court "has broad discretion with respect to what evidence to consider in deciding whether subject

Page **4** of **15**

matter jurisdiction exists, including evidence outside of the pleadings." *Id*. (internal quotation omitted).

Abstention under the *Younger* doctrine[1] is prudential, not jurisdictional. *See O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008). The doctrine, which "is a judicial creation born from principles of equity, comity, and federalism," permits federal courts to withhold their existing jurisdiction in certain circumstances to avoid undue interference with state court proceedings. *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir. 2017). In other words, "[f]ederal courts are to treat *Younger* as a limited carve-out to federal courts' virtually unflagging obligation to exercise their jurisdiction." *Id*. at 205 (internal quotation marks omitted). Abstention doctrines such as *Younger* "are extraordinary and narrow exceptions to the normal rule of mandatory jurisdiction." *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 526 (6th Cir. 2025) (internal quotation omitted).

When a court abstains under *Younger*, "it should stay any claim for damages rather than evaluate the merits and dismiss the case." *Doe v Univ. of Kentucky*, 860 F.3d 365, 372 (6th Cir. 2017) (citations omitted);

---

[1] So named from the case from which it originated, *Younger v. Harris*, 401 U.S. 37 (1971).

*see also Carroll v. City of Mt. Clemens*, 129 F.3d 1072, 1075 (6th Cir. 1998) (holding that when abstaining from a damages claim, as opposed to a claim for injunctive relief, the proper course of action is a stay, not dismissal).

### B. *Younger* Abstention

*Younger* abstention is applicable when three requirements are satisfied: "(1) there must be [related] on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *O'Neill*, 511 F.3d at 643 (internal quotation omitted).

There can be no doubt that the first factor favors abstention. A criminal complaint arising from Joyner's actions on September 21, 2023, was filed in September 2024, eleven months before the initiation of this action. *See* ECF No. 16-2. A warrant for Joyner's arrest was issued upon the filing of the criminal complaint. *Id*. That warrant remains valid and outstanding; the criminal case against Joyner remains open. *Id*. Joyner's argument to the contrary—that "there is no ongoing state proceeding"

where "a warrant was merely issued over a year ago and nothing further has occurred" is nothing short of spurious. ECF No. 21, PageID.217.

As noted by defendants, the pending state criminal case has not advanced beyond an open warrant for Joyner's arrest because Joyner relocated to North Carolina, presumably to avoid prosecution in Michigan for the offenses related to the Comstock Inn altercation at issue in this case, as well as a criminal complaint brought by the Shiawassee County Sheriff Department for multiple counts of police assault/resistance/obstruction (from an October 2023 incident) and two counts of use of controlled substances—methamphetamine and other narcotics (M.C.L. § 333.7404a)[2], and a third complaint charging him with stalking the mother of his child.[3] Warrants for Joyner's arrest for all of these charges remain outstanding and all three criminal cases remain open.

When determining whether state court proceedings involving the plaintiff are pending, courts look to see if the state court proceeding was pending at the time the federal complaint was filed. *Loch v. Watkins*, 337

---

[2] *State of Michigan v. Joyner*, Case No. 2024-24-ST0873-FY (66th District Court-Corunna).

[3] *State of Michigan v. Joyner*, Case No. 2024-24-ST0880-SM (66th District Court-Corunna).

F.3d 574, 578 (6th Cir. 2003). Critically for abstention purposes, a state criminal action "remains pending until a litigant has exhausted his state appellate remedies." *Id*. (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609, (1975)). Joyner's criminal proceedings were pending on the date this action was filed and remain pending today. Not surprisingly, Joyner cites no authority to support his argument that a criminal action prolonged by the defendant's evasion of arrest is somehow no longer pending. Nor has Joyner advanced any rational basis for why this would be so. The Court finds that the first *Younger* requirement is satisfied.

Joyner does not dispute that the state has an important interest in state criminal prosecutions. *See Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (ongoing state criminal prosecutions present one of the exceptional categories of important state interests defining *Younger's* scope); *see also Frost v. Nessel*, 712 F. Supp. 3d 1008, 1013 (W.D. Mich. 2024) ("pending state criminal proceedings have always been viewed as paradigm cases involving paramount state interests")) (internal quotation omitted). Therefore, the second *Younger* factor is satisfied.

Joyner argues that he has no other venue in which to raise his constitutional claims, thus frustrating *Younger*'s third requirement. "When a

person is the target of an ongoing state action involving important state interests, the state defendant cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case." *Carroll*, 139 F.3d at 1074. Although it is true that the state court cannot award damages to Joyner as part of the criminal action against him, that fact simply supports this Court abstain by granting a stay, rather than dismissal, of the § 1983 damages claim. Indeed, the Supreme Court has instructed district courts to stay rather than dismiss claims for monetary relief when such relief is not available from the ongoing state proceeding. *See Deakins v. Monaghan*, 484 U.S. 193, 202–03 (1988); *see also Watts v. Burkhart*, 854 F.2d 839, 849 (6th Cir. 1988).

Moreover, Joyner could certainly make the same constitutional claim at issue in this case—that defendant officers violated the Fourth Amendment by arresting him—in the state court proceedings. Indeed, some of the allegations asserted by Joyner in this action—that defendant officers' use of force in arresting him was not reasonable because he had not committed a crime—are the same arguments he will use to defend against the resisting and obstructing charges in the state criminal case. Because Joyner had the right, under Michigan law, to resist defendant

officers' arrest if that arrest was unlawful, i.e., unreasonable under the Fourth Amendment, Joyner will certainly argue to the state court that his arrest was not reasonable because he had not committed a crime. *See People v. Nordstrom*, ___ N.W.3d ___; 2026 WL 1473863, at *3–4 (Mich. Ct. App. May 26, 2026) (citing *People v. Moreno*, 814 N.W.2d 624, 634 (2012) and *Dist. of Columbia v. Wesby*, 583 U.S. 48, 56 (2018)). In fact, if Joyner's argument to this end is successful and the prosecution cannot establish reasonable grounds for an arrest prior to his resistance, the resisting and obstructing charges pending against Joyner would be dismissed. *See id*. Thus, the resolution of this case on its merits could very well implicate the ultimate issue in the criminal case against Joyner, i.e., whether defendant officers were acting lawfully in arresting Joyner. By staying rather than dismissing Joyner's § 1983 action, the Court "allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists." *Deakins*, 484 U.S. at 202–03.

### C. Other Grounds for Abstention

Even if this case failed to fit neatly within the *Younger* requirements for abstention, *Wallace v. Kato*, 549 U.S. 384 (2007) provides an

alternative basis for "ad hoc abstention" not tied to any of the formal abstention doctrines. *Artis v. Leonard*, 2025 WL 3522105, *1–2 (W.D. Mich. Dec. 9, 2025) (citing *McDonough v. Smith*, 588 U.S. 109, 120 (2019); *see also NOPSI v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ("the various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases"). A *Wallace*-type abstention applies if a civil plaintiff files a "claim related to rulings that will likely be made in a pending or anticipated criminal trial." *Wallace*, 549 U.S. at 393. In those situations, the Supreme Court noted that "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. at 393–94 (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (relying upon the *Colorado River* abstention doctrine[4]) and *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996) (addressing the *Burford* abstention doctrine[5])); *see also Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010) (every court holds

---

[4] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 147 (1979).

[5] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

inherent power to stay proceedings to control its docket with economy of time and effort for itself, counsel, and litigants).

Staying this case under a *Wallace* abstention is particularly appropriate. First, a stay here eliminates the need for the Court to speculate whether Joyner's prosecution, which is in an embryonic stage, will result in conviction or whether this action would impugn that conviction and thus be barred by *Heck*. *Id*. at 393 (citing *Heck*, 512 U.S. at 487, n.7). Second, it preserves Joyner's § 1983 claims from an expiring statute of limitations. *Id*.; *see also James v. Hampton*, 513 F. App'x 471, 477 (6th Cir. 2013). Third, staying this case eliminates the perils that a concurrent or antecedent civil case could present to Joyner as a criminal defendant—telegraphing his defense strategy to the prosecution, "undermining his privilege against self-incrimination, and taking on discovery obligations not required in the criminal context." *McDonough*, 588 U.S. at 120. Conversely, staying this civil matter also prevents Joyner from gaining an improper advantage in the state criminal action by using the much broader scope of civil discovery to pry into the prosecution's case in a manner not otherwise permitted under the Federal Rules of Criminal Procedure. *See Degen v. United States*, 517 U.S. 820, 825–26 (1996).

Page **12** of **15**

Finally, as suggested by defendants' argument for abstention, staying this action until the state criminal proceedings have concluded abides by the equitable underpinnings of the "fugitive disentitlement doctrine," which "limits access to courts in the United States by a fugitive who has fled a criminal conviction[6] in a court in the United States." *In re Prevot*, 59 F.3d 556, 562 (6th Cir. 1995). This doctrine stands for the principle that a fugitive from justice "demonstrate[s] such disrespect for the legal process[] that he has no right to call upon the court to adjudicate his claim." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993).

For the doctrine to apply to dismiss a suit, a moving party must establish that: (1) "the party against whom [the doctrine] is invoked is a fugitive;" (2) his "fugitive status has a sufficient connection to the present action;" and (3) "dismissal is necessary to effectuate the concerns

---

[6] Although *Prevot* defines a fugitive as a person who has fled a criminal *conviction*, many of the cases it cites as authority applied the fugitive disentitlement doctrine to litigants who fled the jurisdiction to avoid indictments or arrests on criminal charges. *See* 59 F.3d at 564–65 (collecting cases); see also *Lazaridis v. Donker*, 2007 WL 2029645 (W.D. Mich. July 11, 2007); *Lazaridis v. Herald Co., Inc.*, 2006 WL 222839, *3 (W.D. Mich. Jan. 26, 2006) (specifically recognizing "that a fugitive is also one who evades arrest on criminal suspicion as well as one who flees prosecution or punishment") (citing Black's Law Dictionary 680 (7th Ed. 1999) and 28 U.S.C. § 2466).

underlying the doctrine." *Ener v. Martin*, 987 F.3d 1328, 1332 (11th Cir. 2021) (quotation marks and citation omitted); *see generally Prevot*, 59 F.3d at 556.

The Court does not directly apply the fugitive disentitlement doctrine because it does not believe that dismissal is necessary to address the equitable concerns behind it. Instead, the Court can settle those concerns by exercising its inherent authority to stay this matter pending the conclusion of the state criminal case. As noted previously, a stay of this case preserves Joyner's federal claims during the pendency of his criminal case. Because the stay will not be lifted until the criminal matter concludes, and that cannot happen until Joyner terminates his fugitive status by returning to Michigan to defend against the pending charges,[7] issuing a stay also honors the equities underlying the fugitive disentitlement doctrine by preventing Joyner from using his scofflaw status to his advantage.

### IV.   Conclusion

For these reasons, the Court abstains from exercising jurisdiction and **STAYS** this case pending the final resolution of *State of Michigan v.*

---

[7] The stay may also be lifted if the State of Michigan were to dismiss the charges against Joyner arising from the incident at issue in this case.

Page **14** of **15**

*Tykeevius Joyner*, Case No. 2024-24-ST0866-FY (66th District Court-Corunna).

For docket management and statistical purposes, the Court **ORDERS** the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case.

Joyner may **MOVE** to reopen the case within **45 days of a final judgment** in the above-referenced criminal matter. The motion to reopen must **SHOW CAUSE** for why the case should not remain administratively closed and must **INCLUDE** the final disposition of the state criminal proceeding.

All pending motions are **DENIED without prejudice** and may be refiled upon the reopening of the case.

**IT IS SO ORDERED.**

s/Shalina D. Kumar
SHALINA D. KUMAR

Dated: June 10, 2026          United States District Judge